IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00702-MSK-MEH

MARIANO J. PIMENTEL, on behalf of himself and
a Class of Judgment Creditors of the Estate of Ferdinand E. Marcos,

     Plaintiff,

v.

DENMAN INVESTMENT CORPORATION, INC.,

     Defendant.

_____

**OPINION AND ORDER DISCHARGING ORDER TO SHOW CAUSE AND
DIRECTING FILING OF AMENDED COMPLAINT**
_____

**THIS MATTER** comes before the Court pursuant to the Court's March 8, 2006 Order to

Show Cause **(# 51)**, the Plaintiff's response **(# 52, as supplemented # 54, 55)**, and the

Defendant's response **(# 53)**.

## BACKGROUND

Plaintiff Pimentel, and the class members he purports to represent, are judgment creditors

of former Philippines President Ferdinand Marcos.  In 1995, the United States District Court for

the District of Hawaii entered judgment in favor of Pimentel and his fellow class members and

against Marcos in the amount of nearly $ 2 billion.  *See Hilao v. Estate of Marcos*, 103 F.3d 767

(9th Cir. 1996) (describing history and affirming judgment).  Pimentel contends that in 1979,

Marcos, through an associate named Jose Campos, purchased a 520-acre parcel of real property

in El Paso County, Colorado called the "JL Ranch" and placed it under the control of the

corporate predecessor of Denman.  Thus, Pimentel contends that the property is beneficially

owned by Marcos' estate, and may be executed against to satisfy the judgment.  Pimentel's

Complaint **(# 1)** seeks a declaration that Marcos' estate is the beneficial owner of the JL Ranch

and an order executing the judgment against the real property.

On March 8, 2006, this Court issued an Order to Show Cause **(# 51)**, observing several

procedural irregularities in the case as it was framed by Pimentel: (i) Pimentel commenced the

action by filing a Complaint, rather than proceeding pursuant to Fed. R. Civ. P. 69 to enforce the

judgment; (ii) the fact that Marcos' estate is apparently subject to ongoing probate proceedings,

and that permitting Pimentel to execute his judgment against property alleged to belong to the

Marcos estate would permit him to bypass probate to the potential detriment of Marcos' other

creditors; and (iii) numerous other individuals, including Marcos' estate and his heirs, Campos and

his heirs, and creditors of Defendant Denman may have an interest in the litigation, yet no such

individuals were named as parties.  The Court directed Pimentel to show cause why the case

should not be dismissed without prejudice, permitting Pimentel to register his judgment and begin

collection proceedings under Fed. R. Civ. P. 69.

Pimentel filed a timely response **(# 52)** to the Order to Show Cause, arguing: (i) his

Complaint adequately sets forth a claim for a declaratory judgment that Marcos is the beneficial

owner of the JL Ranch, thereby supplying an independent basis for federal subject-matter

jurisdiction; (ii) Colorado's judgment collection procedures, incorporated by reference into Fed.

R. Civ. P. 69, do not permit execution of the judgment on property not actually titled in Marcos'

name; (iii) probate proceedings in the Philippines are stalled, and there are no ancillary probate

proceedings in the United States; and (iv) that the Plaintiff is not aware of any persons other than

Denman that would need to be joined in this action.

Pimentel thereafter submitted two supplements to his response. The first **(# 54)** argued that pursuant to Fed. R. Civ. P. 18(b), Pimentel could properly join both his claim for declaratory relief with a contingent claim for execution of the judgment. The second supplement **(# 55)** advised the Court that a United States District Court in the Northern District of Texas, hearing a similar claim by Pimentel with regard to property allegedly owned by Marcos in Texas, had certified a class of plaintiffs to proceed in that case.

Denman also filed a response **(# 53)** to the Order to Show Cause, which merely urged that the action be dismissed for the reasons stated by the Court.

## ANALYSIS

The concerns raised by the Court in its Order to Show Cause can be grouped generally into three categories: (i) whether a claim for declaratory judgment, coupled with a contingent request for execution of the judgment, is a proper form of action; (ii) whether ongoing probate of the Marcos estate in the Philippines presents an obstacle to proceeding in this case; and (iii) whether the proper parties are present. The Court will examine each issue in turn.

### A.  Proper form of action

Having reviewed the arguments and authorities cited by Pimentel in his response, the Court is satisfied that this case is properly brought as a claim for declaratory judgment. As Pimentel notes, C.R.C.P. 69, the Colorado procedural rule governing execution of judgments, incorporated by reference into Fed. R. Civ. P. 69, permits execution only as against real property held in the name of a judgment debtor; where the judgment debtor's interest in the property is disputed, a execution proceeding under C.R.C.P. 69 is premature. *Securities Investor Protection*

*Corp. v. First Entertainment Holding Corp.*, 36 P.3d 175, 179 (Colo. App. 2001).  Thus,

Pimentel is correct that he cannot directly resort to a collection action under Fed. R. Civ. P. 69 to

obtain the relief he seeks.  Pimentel is also correct that a claim for a declaratory judgment can be

used as a vehicle by which disputes as to Marcos' ownership of certain property can be

determined.  Whether Marcos possessed an interest or maintains an interest in the JL Ranch

presents an actual controversy under 28 U.S.C. § 2201.[1]

However, the mere fact that a declaratory judgment can be sought in this action does not

resolve whether this case is properly framed in its present form.  The Declaratory Judgment Act,

28 U.S.C. § 2201, does not create substantive rights; rather, the Act merely creates a procedure

by which parties may obtain relief under some other substantive theory.  *Farmers Alliance Mut.*

*Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978).  Here, it is clear that declaration that

Pimentel seeks is that Marcos is the equitable owner of the JL Ranch and thus, that Pimentel

succeeds to that interest by virtue of a judgment against Marcos.[2]   Moreover, given that Pimentel

seeks to obtain title to the JL Ranch in its entirety, not just to Marcos' interest in it, it is clear that

Pimentel contends not only that Marcos' interest in the property is superior to Denman's, but that

---

[1]In the event that such a declaration entitles Pimentel to execute his judgment and obtain title to the property – a proposition that, for reasons cited *infra.*, among others, is in significant question – this Court appears has the authority to order a transfer of title to the ranch pursuant to Fed. R. Civ. P. 70.

[2]This creates an intriguing paradox.  If Pimentel is successful in obtaining a declaration that the JL Ranch is property of Marcos, presumably it is property of Marcos' estate.  If that is so, the personal representative of the estate would likely be within his or her rights to demand that, having been conclusively adjudicated as Marcos' property, the ranch be administered for the benefit of all of Marcos' creditors and heirs, not just the creditors from Pimentel's judgment. Whether such a demand would trump Pimentel's right to seize the property outright in partial satisfaction of such judgment is a complicated question that, fortunately, the Court need not deal with at this time.

it is superior to all other  potential claimants to the JL Ranch.  Thus, the substantive rights

Pimentel invokes are *in rem*, and that this action is akin to a quiet title action.[3]

     *In rem* cases are subject to distinct procedural and pleading requirements.  As discussed

more fully below, to address the relief requested by Pimentel, the case must be substantially

reframed.

     **B.  Effect of Philippines probate proceeding**

     Although this suit is premised upon diversity jurisdiction, 28 U.S.C. § 1332, it is well-

established that matters involving probate or administration of a decedent's estate nevertheless fall

outside the scope of federal jurisdiction.  *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002),

*citing Markham v. Allen*, 326 U.S. 490, 494 (1946).  At the same time, District Courts possess

jurisdiction to entertain suits by claimants to a decedent's estate to establish their claims.

*Rienhardt v. Kelly*, 164 F.3d 1296, 1299 (10th Cir. 1999), *citing Markham*.  Because probate

proceedings are matters of state law, the inquiry to be undertaken by the District Court is

whether, under state law, the dispute would be cognizable only by the probate court.  If so, the

parties will be relegated to that court; if the suit merely seeks to enforce a claim cognizable in a

state court of general jurisdiction, the District Court may exercise its own subject-matter

jurisdiction over the claim.  *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988); *see also*

---

[3]One might argue that Pimentel's claim is in the nature of a proceeding to set aside a
fraudulent conveyance.  However, under Colorado law, an action alleging a fraudulent
conveyance of real property is essentially a challenge to the validity of the nominal title to the
property.  *Crown Life Ins. Co. v. April Corp.*, 855 P.2d 12, 15 (Colo. App. 1992).  The remedy in
a fraudulent conveyance action is to void the transfer, but not necessarily to allow the creditor to
execute on the property, as innocent third parties who have acquired a legitimate interest in the
property since the conveyance are entitled to have their rights preserved.  Thus, a fraudulent
conveyance action becomes the substantive equivalent of a quiet title action.

*Golden ex rel. Golden v. Golden*, 382 F.3d 348, 357-58 (3d Cir. 2004) (detailed discussion of probate exception).

Of course, the probate of Marcos' estate is occurring not in any state court,[4] but in the Philippines.  Whether the probate exception in *Markham* applies with equal force to probate proceedings in foreign nations is an issue upon which there is apparently little precedent. Nevertheless, it is clear that the Court need not reach that issue at this time, as it is clear that, under Colorado law,[5] quiet title claims – even those involving property putatively owned by a decedent – are not confined to the exclusive jurisdiction of the probate court.  *See e.g. Martinez v. Archuleta-Padia*, ___ P.3d ___, 2006 WL 1493796 (Colo. App., June 1, 2006) (disputes as to ownership of decedent's property are not claims against the decedent's estate, and are cognizable in Colorado's District Courts).  By hearing Pimentel's  claim, this Court will not directly intrude upon the probate proceedings in the Philipines.  Thus, the probate exception does not deprive this Court of subject-matter jurisdiction over that portion of Pimentel's claim that seeks to quiet the title of the JL Ranch in Marcos.[6]

---

[4]Efforts to seek probate of Marcos' estate in Hawaii were rejected by the Hawaii Supreme Court.  *See In re Estate of Ferdinand Marcos,* 963 P.2d 1124 (Haw. 1998).

[5]Logically, probate courts in the Philippines lack jurisdiction to conclusively adjudicate title to real property located in Colorado.  Such a determination must necessarily be decided under Colorado law.

[6]As stated previously, however, if the Court does declare the JL Ranch to be Marcos' property, it may be that any further proceedings to execute Pimentel's judgment against that property might run afoul of the probate exception, given that distribution of a decedent's property is usually a function reserved exclusively to probate courts.  Because the merits of Pimentel's quiet title claim remain in dispute, the Court need not reach that issue at this time.

### C. Proper parties / Form of Action

Having determined that this action is akin to a quiet title action, the Court can now address the proper form for the action to take, as well as the parties that must be joined in it.

As an *in rem* action, the Court's subject-matter jurisdiction depends upon its control over the *res*, and service of process is the mechanism by which the Court obtains its jurisdiction. *See U.S. v. 2,164 Watches*, 366 F.3d 767, 771 (9th Cir. 2004). 28 U.S.C. § 1655 sets forth specific procedures to be used in cases "to enforce any . . . claim to . . . the title to[ ] real . . . property within the district." In effect, that statute requires the identification and joinder of all persons who may have an interest in the *res*. Where such persons cannot be served within the State of Colorado, the Court can direct Pimentel to effectuate service upon these "absent defendants" wherever they may be found, or, if such service is impractical, permit these absent defendants to be served by publication. 28 U.S.C. § 1655.

Colorado's own rules of civil procedure, although not binding on this Court on procedural matters, nevertheless also provide helpful guidance as to how the action should be framed and who should be named as parties. Under C.R.C.P. 105(g), the Complaint must identify the property by its legal description. The present Complaint merely describes the property in question as the JL Ranch. The Court will direct that Pimentel file an Amended Complaint that not only properly sets forth his claim as one for a declaration quieting title to the property in Marcos' name, but further, that it describe the property in question consistent with the requirements of C.R.C.P. 105(g).

C.R.C.P. 105(f) contemplates the filing of a *lis pendens*. Although arrest of the property is not an act essential to securing this Court's *in rem* jurisdiction, *see* Wright & Miller, Federal

Practice and Procedure, Civil 3d. § 1070 ("attachment or garnishment at the outset does not appear to be necessary in true-in-rem actions . . . [but] attachment at the outset is – at a minimum – a sound rule of administration"), Pimentel's filing of a *lis pendens* would serve to alert any prospective purchasers of the pendency of his claims. The Court will not require Pimentel to file a *lis pendens*, but encourages him to do so.

The final matter concerns identification of those possessing a potential interest in the property. C.R.C.P. 105 is intended to completely adjudicate the rights of all persons claiming an interest in the property, *Keith v. Kinney*, 961 P.2d 516, 518-19 (Colo. App. 1997), and 28 U.S.C. § 1655 makes it clear that persons claiming an interest in the property who were not joined as parties retain the ability to reopen the action and assert their own claims. Thus, identification of all persons having a real or potential claim to ownership of the JL Ranch is essential to the finality of any adjudication by this Court. C.R.C.P. 105(b) requires that the person in actual possession be made a party to the action. By all appearances, Denman is in actual possession of the ranch at this time, and thus, Denman is a necessary party. To the extent that there are others who claim some rights in the property through Denman – say, lienors, or lessees of Denman – and whose interests are recorded, they must be named as defendants.[7] C.R.C.P. 105(b). In addition, Pimentel's Complaint itself indicates that Jose Campos (or his estate) purports to possess an interest in the property. *Docket* # 1, ¶ 23 ("Campos asserted his ownership of the above property to the exclusion of Marcos"). Thus, Campos (or his estate) must be joined to this suit as a

---

[7]C.R.C.P. 105(b) provides that persons claiming rights in the property through Denman need not be joined if those persons' rights are not recorded.

defendant.  Finally, the person(s) appointed by the Philippine probate court[8] to administer

Marcos' estate arguably has an interest in Marcos' property, and therefore must be made a party.

To the extent that Pimentel is or becomes aware of any others claiming an interest in the property,

those persons must be joined as well.

The Court will direct that, within 30 days of the date of this Order, that Pimentel file an

Amended Complaint that identifies all persons having an interest in the property, adequately

describes the claims asserted, and otherwise complies with 28 U.S.C. § 1655 and C.R.C.P. 105.

Pursuant to 28 U.S.C. § 1655, the Court directs that Pimentel promptly effectuate personal

service of the Summons and Amended Complaint upon any parties not previously served in this

case, wherever they may be found.  Service by publication will only be permitted upon a showing

that effecting personal service is impractical.  Upon service, each Defendant shall have 20 days

within which to answer or otherwise respond[9] to the Amended Complaint, and the Court will set a

---

[8]Pimentel's response **(# 52)** to the Order to Show Cause indicates that Marcos' wife and son have been appointed as executors of the estate, and that those appointments are "mired in appeals."  However, *In re Estate of Marcos* indicates that, at least as of 1998, Marcos' wife and son were named only as Marcos' representatives for purposes of the civil rights lawsuit brought by Pimentel and others, 963 P.2d at 1126, and that the Philippine probate court appointed Liwayway Vinzons-Chato, the Philippines' Commissioner of Internal Revenue, as "special administratix," overseeing the estate until the formal appointment of an administrator was made. 963 P.2d at 1127.  This Court will not purport to resolve any ongoing dispute as to who has legal authority to administer Marcos' estate under Philippine law.  To the extent that there is uncertainty, it would be to Pimentel's benefit to join any person potentially possessing such authority as a party to this action, lest the judgment ultimately entered by this Court be subject to subsequent collateral attack.

[9]The Court is cognizant that it has yet to reach the merits of Denman's Motion to Dismiss **(# 4)**, which the Court converted to a Motion for Summary Judgment **(# 14)**.  That motion contends that the Philipines has declared that Campos, not Marcos, is the beneficial owner of the JL Ranch, and that this Court should defer to that determination pursuant to the "Act of State Doctrine."  Because the re-framing of the claims in this case may have an effect on the viability of this argument, the Court denies Denman's motion without prejudice.  To the extent that Denman

prompt Scheduling Conference pursuant to Fed. R. Civ. P. 16 to address discovery and the future

path of the case.  It appearing that the Final Pretrial Conference, currently scheduled for

November 28, 2006, will be premature, the Court vacates that hearing.

## CONCLUSION

For the foregoing reasons, the Court's Order to Show Cause **(# 51)** is discharged.  Within

30 days of this Order, the Plaintiff shall file and promptly serve an Amended Complaint, naming

the appropriate Defendants and accurately setting forth the nature of the claims as discussed

herein.  Upon service, the Defendants shall have 20 days to answer or move against the Amended

Complaint.  The Final Pretrial Conference, set for November 28, 2006, is **VACATED**.

Dated this 11th day of October, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

---

believes that the Act of State Doctrine remains applicable to the case as reframed by the Amended
Complaint, it may file an appropriate motion in response.